# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TERRANCE TICO TURNER,        )
                             )
            Plaintiff,       )
                             )
    v.                       )        1:14CV379
                             )
SGT. TURNER, et al.,         )
                             )
            Defendants.      )

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned Magistrate Judge for a recommended ruling on Defendant Bunn's Motion to Dismiss for Failure to State a Claim (Docket Entry 11), as well as for review of service of process on Defendants Turner, Killough, and Clevenger. For the reasons that follow, the Court should grant the instant Motion and the undersigned Magistrate Judge will direct Attorney Donna Tanner to assist in effecting service on the remaining Defendants.

### BACKGROUND

Plaintiff, a North Carolina state prisoner, initiated this action by filing a pro se form Complaint under 42 U.S.C. § 1983 (Docket Entry 2), alleging deprivation of his rights in connection with injuries sustained when an inmate in the adjacent cell started a fire (id. at 3). The Complaint names Sgt. Turner, Corporal Killough, Officer Bunn, and Officer Clevenger as Defendants.

(Id. at 2.)[1]  It states that Defendants failed to promptly remove Plaintiff from his cell, and that his resulting exposure to smoke led to his hospitalization and ongoing health issues.  (Id. at 3.) In that regard, Plaintiff's Complaint asserts that Defendants' alleged inaction amounted to an infliction of cruel and unusual punishment under the Eighth Amendment.  (See id.)  In support of the foregoing, the Complaint offers the following factual material:

1) "[o]n January 14, 2012[,] at approximately 7 p.m.[,] while [Plaintiff] rest[ed] inside [his] cell on the segregation unit of Orange Correctional Center, [Plaintiff] was suddenly aw[o]ken from coughing and chok[]ing from thick black smoke filling the air [and] also an inmate next door to [Plaintiff] yelling and kicking on his door" (id.);

2) "[t]his particular inmate had allegedly set a fire in his cell which resulted in [Plaintiff's] cell and basically the entire block being consumed in black smoke" (id.);

3) "being unable to breathe and barely able to see[,] [Plaintiff] immediately got off [his] bunk[,] went to [his] cell door[,] and got the officer[']s attention that was next door dealing with the inmate who set the fire" (id.);

4) "[Plaintiff] requested [that] [Defendants Killough, Bunn, and Clevenger] please remove [Plaintiff] from [his] cell due to

---

[1] Plaintiff's Complaint names "Officer Bun" as a Defendant (Docket Entry 2 at 2); however, the instant Motion identifies "Bunn" as the correct spelling (Docket Entry 11 at 1 n.1).

smoke inh[a]lation[,] plus [Plaintiff] was f[ee]ling very dizzy headed" (id.);

5) "[Defendant] Killough then told [Plaintiff] to go sit down [and] that [Plaintiff] would be all right" (id.);

6) "[Defendants Killough, Bunn, and Clevenger] then walked away from [Plaintiff's] cell door [and] totally ignored [Plaintiff's] request to move [him] to safety so [he] could breathe" (id.);

7) "[s]hortly thereafter [Defendant] Turner entered the block [to] assist[] the other officers with the situation after [Defendants] Bun[n] and [] Clevenger radioed in and announced a code blue on the segregation unit" (id.);

8) "[Plaintiff] then got [Defendant] Turner's attention and he came to [Plaintiff's] cell door and [Plaintiff] requested to him to please help [Plaintiff] and remove [him] from [his] cell . . . because [he] felt [him]self about to black out" (id.);

9) "[Plaintiff] also decla[]red to [Defendant Turner] a medical emergency and then he told [Plaintiff] to shut up and go sit or lay down on [the] bunk because he wasn't remov[]ing [Plaintiff] from his cell . . . [and] he then walked away" (id.);

10) "[the] [l]ast thing [Plaintiff] could remember was trying to walk back to [his] bunk [and] [Plaintiff] then lost consciousness falling hitting [his] back on the steel toilet and sink plus banging [his] head on the cement floor" (id.);

11) "[w]hen [Plaintiff] regained consciousness [he] was at U.N.C. Health Care Unit with IVs in [his] arms and the doctor t[old] [him] [he] had [been] rushed from Orange Correctional Center to his Health Care Unit from being passed out on the floor of [his] cell for smoke inh[a]lation" (id.);

12) "[Plaintiff] also had to take cat scans for the knot that was on [his] forehead" (id.);

13) Plaintiff continues to "suffer with head aches daily, back pains constantly and depression so [he] consulted with a doctor and there are problems with [his] head and back so [the] doctor put [Plaintiff] on medication for [his] head and back pains and also [his] depression" (id.);

14) "[Plaintiff's] doctor also stated [that] [Plaintiff] would be on medication for these problems for the rest of [his] life" (id.).

Based on the foregoing allegations, Plaintiff seeks $40,000 in compensatory damages against each Defendant, $15,000 in punitive damages against each Defendant, as well as recovery of his costs incurred in bringing this action. (Id. at 4.) The undersigned Magistrate Judge granted Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 3 at 1) and, further, ordered the United States Marshals Service to serve Plaintiff's Complaint and the completed summonses on Defendants (id. at 3). The Marshals successfully executed service on Defendant Bunn (Docket Entry 7);

however, the Orange Correctional Center returned as unexecuted the summonses issued to Defendants Turner, Killough, and Clevenger (Docket Entry 6 at 1-3). In that regard, the Orange Correctional Center reported to the Marshals that Defendants Turner, Killough, and Clevenger no longer work at that facility and that Defendant Killough has retired. (Id.)

Defendant Bunn now moves to dismiss, asserting: (1) Plaintiff has failed to state a claim for a violation of his Eighth Amendment rights; (2) qualified immunity bars Plaintiff's claim against Defendant Bunn in his individual capacity; and (3) Plaintiff has not adequately pled allegations to support relief in the form of punitive damages. (Docket Entry 11 at 1-2.) Plaintiff responded, describing the facts of his case in greater detail and addressing Defendant Bunn's arguments concerning the Eighth Amendment and punitive damages. (Docket Entry 18.)[2] Defendant Bunn did not reply. (See Docket Entries dated Nov. 12, 2014, to present.)

## DISCUSSION

Defendant Bunn first contends that "Plaintiff has failed to state a claim pursuant to Fed[eral] R[ule] [of] Civ[il] P[rocedure] 12(b)(6) for a violation of his Eighth Amendment Rights due to any

---

[2] Plaintiff's Response additionally identifies "Mr. G. Soloman" and "Mr. A Hughes" as Defendants (see Docket Entry 18 at 1-2); however, Plaintiff did not include these Defendants in his Complaint (see Docket Entry 2 at 1-3). Should Plaintiff wish to name additional Defendants in this action, he must follow the procedure outlined in Federal Rule of Civil Procedure 15(a).

action or inaction by Defendant Bunn." (Docket Entry 11 at 1.) Under said Rule, a complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing

-6-

pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, 'the deprivation alleged must be sufficiently serious.'" Brown v. North Carolina Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (quoting Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003)). "Second, a prisoner must demonstrate that the prison official had a 'sufficiently culpable state of mind.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In that regard, "the requisite "state of mind is one of 'deliberate indifference' to inmate health or safety." Odom, 349 F.3d at 770 (quoting Wilson, 501 U.S. at 297). "In other words, 'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail

to do so.'"  Brown, 612 F.3d at 723 (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)).

Even assuming that Plaintiff has satisfied the first prong by alleging serious and ongoing injuries from his exposure to smoke, Plaintiff's claim against Defendant Bunn fails under the second prong because Plaintiff has not pleaded any facts to support an inference that Defendant Bunn had a "sufficiently culpable state of mind," id.  The Complaint's only references to Defendant Bunn consist of the allegations: (1) that Plaintiff got the attention of Defendant Bunn (along with Defendants Clevenger and Killough); (2) that Defendant Bunn (along with Defendant Clevenger) subsequently walked away; and (3) that Defendant Bunn (along with Defendant Clevenger) "radioed in and an[n]ounced a code blue on the segregation unit."  (See Docket Entry 2 at 3.)  In that regard, Plaintiff's Complaint contains no factual allegations that remotely bear on Defendant Bunn's state of mind, let alone support an inference of deliberate indifference to Plaintiff's safety.

Furthermore, although Plaintiff alleges that Defendants Killough and Turner responded to his call for help and spoke directly to him, Plaintiff does not offer any factual material to support the contention that Defendant Bunn actually heard Plaintiff's request for removal from his cell.  (See id.; see also Docket Entry 18 at 2-3 (Plaintiff's statement of facts in response to the instant Motion).)  In that regard, Defendant Bunn's alleged

involvement in the incident appears to have been so minimal as to preclude a § 1983 claim under the Eighth Amendment. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). Plaintiff's allegations, even liberally construed, simply do not support the position that Defendant Bunn "kn[e]w [] [P]laintiff face[d] a serious danger to his safety and [Defendant Bunn] could [have] avert[ed] the danger easily yet [he] fail[ed] to do so," Brown, 612 F.3d at 723 (internal quotation marked omitted). Under these circumstances, Plaintiff's Complaint fails to state a claim under the Eight Amendment.

Next, Defendant Bunn asserts that "Plaintiff's claims against [] Defendant [Bunn] in his individual capacit[y] should be dismissed pursuant to the doctrine of qualified immunity." (Docket Entry 11 at 1.)[3] "Qualified immunity from § 1983 claims 'protects government officials from liability for civil damages insofar as

---

[3] Plaintiff contends that "[e]ach Defendant is sued indiv[i]dually and in his official capacity." (Docket Entry 18 at 2.) However, state sovereign immunity bars a claim for damages against state officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citation omitted)), and Plaintiff's Complaint appears to seek only money damages (see Docket Entry 2 at 4).

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (some internal quotation marks omitted). Put simply, qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas [and] [i]t encourages capable citizens to join the ranks of public servants by removing the threat of constant litigation." Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (internal citation and quotation marks omitted). Accordingly, "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Pearson, 555 U.S. at 236 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). For that reason, the United States Supreme Court "'repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

"Determining whether qualified immunity applies involves a two-prong inquiry: 'whether the facts make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Pearson, 555 U.S. at 232 (internal ellipsis omitted)). "However, it is within

[the Court's] discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" Doe ex rel. Johnson, 597 F.3d at 169 (quoting Pearson, 555 U.S. at 236). The Supreme Court has observed that, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." Pearson, 555 U.S. at 239-40. Under such circumstances, a court may properly proceed to the second prong to avoid "an uncomfortable exercise where the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed . . . ." Id. at 240 (internal quotation marks, brackets, and ellipsis omitted).

Accordingly, in this case, the Court need not first consider whether a violation of a constitutional right has actually occurred under the first prong to conclude that no violation of a <u>clearly established right</u> has occurred under the second prong. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has "not require[d] a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond

debate." Id.  Moreover, "[t]he universe of existing precedent is not unlimited [and] [c]ourts "'ordinarily need not look beyond the decisions of the Supreme Court, [the relevant] court of appeals, and the highest court of the state in which the case arose.'" West, 771 F.3d at 213 (quoting Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012)).

In the instant case, according to Plaintiff, Defendant Bunn (along with Defendants Turner, Killough, and Clevenger) had to respond to a fire caused by another prisoner that threatened the safety of the entire segregation unit.  (See Docket Entry 18 at 2-3.)  That such a circumstance evidently required prison staff to act quickly and consider the safety of numerous prisoners and guards alike weighs against finding a clearly established violation.  For instance, in a case involving a prisoner deliberately shot by a guard without warning in the course of a prison riot, the Supreme Court stated that, "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley v. Albers, 475 U.S. 312, 320 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010).  The Supreme Court then concluded that no violation of the prisoner's Eighth Amendment

-12-

rights had occurred and reinstated the district court's entry of a directed verdict for the prison officials. (Id. at 326-28.)

In response to the instant Motion, Plaintiff cites several cases in which "court[s] have acknowledged violations of prisoners['] Eighth Amendment rights based on 'air quality.'" (Docket Entry 18 at 4 (citing Talal v. White, 403 F.3d 423 (6th Cir. 2005) and Alvarado v. Litscher, 267 F.3d 648 (7th Cir. 2001)).) However, these claims involved exposure to secondary tobacco smoke over extended periods of time, brought by prisoners with special medical needs which were known to and apparently ignored by prison staff. See Talal, 403 F.3d at 427-28; Alvarado, 267 F.3d at 651. In contrast, the instant case presented a short-term exposure to smoke as a result of a fire started by an inmate, an emergency to which the prison staff had little time to consider their response. (See Docket Entry 2 at 3.) See also West, 771 F.3d at 213 ("Qualified immunity takes cognizance of human imperfections. Implicit in the idea that officials have some immunity for their acts, is a recognition that they may err and that it is better to risk some error and possible injury from such error than not to decide or act at all." (internal quotation marks and ellipsis omitted)). Plaintiff cites another case for the proposition that "[p]rison official are responsible for protecting inmates from and against fire hazards." (Docket Entry 18 at 4 (citing Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985)).) In

that case, the Ninth Circuit affirmed a district court's conclusion that a prison's substandard fire <u>prevention</u> (amongst other hazardous conditions) violated the Eighth Amendment, <u>see</u> <u>Hoptowit</u>, 753 F.2d at 783-84, circumstances not alleged here (<u>see</u> Docket Entry 2 at 3; Docket Entry 18 at 2-3). Put simply, Plaintiff has not identified any adequate basis to support a finding that Defendant Bunn committed a clearly established violation of Plaintiff's Eighth Amendment rights. In sum, qualified immunity protects Defendant Bunn and the Court should dismiss Plaintiff's claims against Defendant Bunn.

Defendant Bunn finally asserts that "Plaintiff's claims against [him] for punitive damages should be dismissed for failure to adequately plead allegations rising to the level of punitive relief." (Docket Entry 11 at 3.) "'[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" <u>Smith v. Pepersack</u>, Nos. 98-1842, 98-1843, 194 F.3d 1305 (table), 1999 WL 760218, at *5 (4th Cir. 1999) (unpublished) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)). Moreover, "the callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim." <u>Cooper v. Dyke</u>, 814 F.2d 941, 948 (4th Cir. 1987). Given that

-14-

equivalence, as discussed above, Plaintiff's Complaint fails to allege facts to support the contention that Defendant Bunn demonstrated deliberate indifference, the Complaint also fails to state a claim for punitive damages.

As a final matter, the Court has an obligation to undertake further steps to effect service on Defendants Turner, Killough, and Clevenger before considering dismissal as to those Defendants for insufficient service of process. See generally Greene v. Holloway, No. 99-7380, 210 F.3d 361 (table), 2000 WL 296314, at *1 (4th Cir. Mar. 22, 2000) (unpublished). For this reason, the undersigned Magistrate Judge will direct Attorney Donna Tanner of the North Carolina Department of Justice to assist the Court in meeting that obligation. Accordingly, Attorney Tanner shall file a notice with the Court, either: (1) providing the best possible address (determined after reasonable inquiry) where the Marshals Service may make proper service on Defendants Turner, Killough, and Clevenger; (2) stating that she can and will accept service on behalf of Defendants Turner, Killough, and Clevenger; or (3) setting forth an alternate proposal for how the Court reasonably and efficiently could meet its obligation to effect service of process on said Defendants. The undersigned Magistrate Judge thanks Attorney Tanner for her assistance in streamlining service issues related to these Defendants.

**CONCLUSION**

Defendant Bunn has established grounds for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS THEREFORE RECOMMENDED** that Defendant Bunn's Motion to Dismiss for Failure to State a Claim (Docket Entry 11) be granted.

**IT IS FURTHER ORDERED** that Attorney Donna Tanner shall file a Notice on or before January 7, 2014, <u>either</u>: (1) setting forth addresses for Defendants Turner, Killough, and Clevenger, at which the Court best could seek to make proper service of process based on reasonable investigation by counsel, which addresses may be submitted under seal; (2) stating that she will accept service on behalf of Defendants Turner, Killough, and Clevenger; <u>or</u> (3) stating any other proposal for how the Court reasonably and efficiently could meet its obligation to effect service of process on said Defendants.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

December 19, 2014