# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TERRANCE TICO TURNER,       )
                            )
            Plaintiff,      )
                            )
    v.                      )       1:14CV379
                            )
SGT. TURNER, et al.,        )
                            )
            Defendants.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned Magistrate Judge for a recommended ruling on Defendants Clevenger, Killough, and Turner's Motion to Dismiss. (Docket Entry 31). For the reasons that follow, the Court should grant the instant Motion.

## BACKGROUND

Plaintiff, a North Carolina state prisoner, initiated this action by filing a pro se form Complaint under 42 U.S.C. § 1983 (Docket Entry 2), alleging deprivation of his rights in connection with injuries sustained when an inmate in the adjacent cell started a fire (id. at 3). It states that Defendants failed to promptly remove Plaintiff from his cell, and that his resulting exposure to smoke led to his hospitalization and ongoing health issues. (Id. at 3.) In that regard, Plaintiff's Complaint asserts that Defendants' alleged inaction amounted to an infliction of cruel and unusual punishment under the Eighth Amendment. (See id.) In

support of the foregoing, the Complaint offers the following factual material:

1) "[o]n January 14, 2012[,] at approximately 7 p.m.[,] while [Plaintiff] rest[ed] inside [his] cell on the segregation unit of Orange Correctional Center, [Plaintiff] was suddenly aw[o]ken from coughing and chok[]ing from thick black smoke filling the air [and] also an inmate next door to [Plaintiff] yelling and kicking on his door" (id.);

2) "[t]his particular inmate had allegedly set a fire in his cell which resulted in [Plaintiff's] cell and basically the entire block being consumed in black smoke" (id.);

3) "being unable to breathe and barely able to see[,] [Plaintiff] immediately got off [his] bunk[,] went to [his] cell door[,] and got the officer[']s attention that was next door dealing with the inmate who set the fire" (id.);

4) "[Plaintiff] requested [that] [Defendants Killough and Clevenger, as well as former-Defendant Bunn] please remove [Plaintiff] from [his] cell due to smoke inh[a]lation[,] plus [Plaintiff] was f[ee]ling very dizzy headed" (id.);

5) "[Defendant] Killough then told [Plaintiff] to go sit down [and] that [Plaintiff] would be all right" (id.);

6) "[Defendants Killough and Clevenger, as well as former-Defendant Bunn] then walked away from [Plaintiff's] cell door [and]

totally ignored [Plaintiff's] request to move [him] to safety so [he] could breathe" (id.);

7) "[s]hortly thereafter [Defendant] Turner entered the block [to] assist[] the other officers with the situation after [former-Defendant] Bun[n] and [Defendant] Clevenger radioed in and announced a code blue on the segregation unit" (id.);

8) "[Plaintiff] then got [Defendant] Turner's attention and he came to [Plaintiff's] cell door and [Plaintiff] requested to him to please help [Plaintiff] and remove [him] from [his] cell . . . because [he] felt [him]self about to black out" (id.);

9) "[Plaintiff] also decla[]red to [Defendant Turner] a medical emergency and then he told [Plaintiff] to shut up and go sit or lay down on [the] bunk because he wasn't remov[]ing [Plaintiff] from his cell . . . [and] he then walked away" (id.);

10) "[the] [l]ast thing [Plaintiff] could remember was trying to walk back to [his] bunk [and] [Plaintiff] then lost consciousness falling hitting [his] back on the steel toilet and sink plus banging [his] head on the cement floor" (id.);

11) "[w]hen [Plaintiff] regained consciousness [he] was at U.N.C. Health Care Unit with IVs in [his] arms and the doctor t[old] [him] [he] had [been] rushed from Orange Correctional Center to his Health Care Unit from being passed out on the floor of [his] cell for smoke inh[a]lation" (id.);

12) "[Plaintiff] also had to take cat scans for the knot that was on [his] forehead" (id.);

13) Plaintiff continues to "suffer with head aches daily, back pains constantly and depression so [he] consulted with a doctor and there are problems with [his] head and back so [the] doctor put [Plaintiff] on medication for [his] head and back pains and also [his] depression" (id.); and

14) "[Plaintiff's] doctor also stated [that] [Plaintiff] would be on medication for these problems for the rest of [his] life" (id.).

Based on the foregoing allegations, Plaintiff seeks $40,000 in compensatory damages against each Defendant, $15,000 in punitive damages against each Defendant, as well as recovery of his costs incurred in bringing this action. (Id. at 4.) Defendant Bunn subsequently moved to dismiss for failure to state a claim (Docket Entry 11) and the Court (per United States District Judge Loretta C. Biggs) granted that Motion (see Docket Entry 27 (adopting Docket Entry 19)).

The remaining Defendants now move to dismiss, asserting: (1) Plaintiff has failed to state a claim for a violation of his Eighth Amendment rights; (2) qualified immunity bars Plaintiff's claim against Defendants in their individual capacities; and (3) Plaintiff has not adequately pled allegations to support relief in the form of punitive damages. (Docket Entry 31 at 1-2.) Despite

-4-

notice of his right to respond (Docket Entries 35, 36), Plaintiff has not responded (see Docket Entries dated Mar. 30, 2015, to present).

## **DISCUSSION**

As an initial matter, under this Court's Local Rules, failure to respond to a motion generally warrants granting the relief requested. See M.D.N.C. R. 7.3(k) ("If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."). "While this uncontested motion [to dismiss] could be granted without further notice, in the interest of justice, the merits of the motion will be addressed below." Brown v. Blue Cross & Blue Shield of N.C., 226 F.R.D. 526, 527 (M.D.N.C. 2004) (Tilley, C.J.); see also Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) ("The fact is that if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule."); cf. Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010) ("[I]n considering a motion for summary judgment, the district court must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a

-5-

matter of law."). Defendants first contend that "Plaintiff has failed to state a claim pursuant to Fed[eral] R[ule] [of] Civ[il] P[rocedure] 12(b)(6) for a violation of his Eighth Amendment Rights due to any action or inaction by Defendants." (Docket Entry 31 at 1.) Under said Rule, a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth

-6-

Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, 'the deprivation alleged must be sufficiently serious.'" Brown v. North Carolina Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (quoting Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003)). "Second, a prisoner must demonstrate that the prison official had a 'sufficiently culpable state of mind.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In that regard, "the requisite "state of mind is one of 'deliberate

indifference' to inmate health or safety." Odom, 349 F.3d at 770 (quoting Wilson, 501 U.S. at 297).

"In other words, 'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" Brown, 612 F.3d at 723 (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)). However, "even subjective knowledge of [a prisoner's] medical needs is not enough; the officers must have *actually known that their response was inadequate* to address those needs." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (emphasis in original). "This subjective assessment 'sets a particularly high bar to recovery.'" Parker v. Maryland, 413 F. App'x 634, 638 (4th Cir. 2011) (quoting Iko, 535 F.3d at 241). "'In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety.'" Odom, 349 F.3d at 770 (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)).

Even assuming that Plaintiff has satisfied the first prong by alleging serious and ongoing injuries from his exposure to smoke, Plaintiff's claim against Defendants fails under the second prong because Plaintiff has not pleaded any facts to support an inference that Defendants possessed a "sufficiently culpable state of mind,"

Brown, 612 F.3d at 723. In that regard, the Complaint states that Plaintiff twice asked one or more Defendants to let him out of his cell to escape the smoke from a fire started by a nearby inmate. (See Docket Entry 2 at 3.) Plaintiff first made that request of Defendants Killough and Clevenger (as well as former-Defendant Bunn) because he felt dizzy from the smoke, in response to which Defendant Killough advised Plaintiff to sit down. (Id.) The officers then left, according to Plaintiff, to announce a "code blue" on the segregation unit. (Id.) Subsequently, Plaintiff requested that Defendant Turner let him out of his cell, which request Defendant Turner refused. (Id.) Defendant Turner further told Plaintiff to "shut up and go sit or lay down on [the] bunk . . . ." (Id.) Such allegations do not suffice to support an inference that any Defendants acted with deliberate indifference for several reasons.

First, none of the above-cited allegations concerning Defendants' conduct appear to have any reasonable bearing on any Defendant's state of mind as to Plaintiff's safety. (See id.) In other words, the Complaint provides no support for the proposition that Defendants "*actually kn[ew] their response was inadequate* to address [Plaintiff's] needs," Iko, 535 F.3d at 242 (emphasis in original). Second, the face of the Complaint indicates that Defendants could not immediately address Plaintiff's medical needs because they were actively engaged in responding to the fire - an

-9-

emergency caused by another prisoner that threatened the safety of the entire segregation unit. (See Docket Entry 2 at 5.) That such a circumstance evidently required prison staff to act quickly and consider the safety of numerous prisoners and guards alike weighs strongly against a finding of deliberate indifference.

For instance, in a case involving a prisoner deliberately shot by a guard without warning in the course of a prison riot, the Supreme Court stated that, "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley v. Albers, 475 U.S. 312, 320 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). The Supreme Court then concluded that no violation of the prisoner's Eighth Amendment rights had occurred and reinstated the district court's entry of a directed verdict for the prison officials. Id. at 326-28.

Given that context - and without regard to Defendants' knowledge of Plaintiff's medical needs - Defendants' conduct in attending to the fire first before attending to Plaintiff's medical needs does not support a finding that Defendants unreasonably responded to existing risks under the circumstances. See Odom, 349 F.3d at 770. Finally, although Defendants were not able to avert

-10-

Plaintiff's injuries, they did provide Plaintiff with appropriate medical care to address those injuries by transporting him to the hospital. (Docket Entry 2 at 5.) In sum, Plaintiff's Complaint fails to state a claim under the Eighth Amendment.

Next, Defendants assert that "Plaintiff's claims against [] Defendants in their individual capacities should be dismissed pursuant to the doctrine of qualified immunity." (Docket Entry 31 at 1.)[1] The Court should dismiss this case on this alternative grounds as well. "Qualified immunity from § 1983 claims 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (some internal quotation marks omitted). Put simply, qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad

---

[1] Plaintiff, in responding to Defendnt Bunn's Motion to Dismiss, contended that "[e]ach Defendant is sued indiv[i]dually and in his official capacity." (Docket Entry 18 at 2.) However, state sovereign immunity bars a claim for damages against state officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citation omitted)), and Plaintiff's Complaint appears to seek only money damages (see Docket Entry 2 at 4).

-11-

guesses in gray areas [and] [i]t encourages capable citizens to join the ranks of public servants by removing the threat of constant litigation." Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (internal citation and quotation marks omitted). Accordingly, "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Pearson, 555 U.S. at 236 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). For that reason, the United States Supreme Court "'repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

"Determining whether qualified immunity applies involves a two-prong inquiry: 'whether the facts make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Pearson, 555 U.S. at 232 (internal ellipsis omitted)). "However, it is within [the Court's] discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" Doe ex rel. Johnson, 597 F.3d at 169 (quoting Pearson, 555 U.S. at 236). The Supreme Court has observed that, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." Pearson, 555

-12-

U.S. at 239-40.  Under such circumstances, a court may properly proceed to the second prong to avoid "an uncomfortable exercise where the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed . . . ."  <u>Id.</u> at 240 (internal quotation marks, brackets, and ellipsis omitted).

Accordingly, in this case, the Court need not first consider whether a violation of a constitutional right has actually occurred under the first prong to conclude that no violation of a <u>clearly established right</u> has occurred under the second prong.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  The Supreme Court has "not require[d] a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  <u>Id.</u>  Moreover, "[t]he universe of existing precedent is not unlimited [and] [c]ourts "'ordinarily need not look beyond the decisions of the Supreme Court, [the relevant] court of appeals, and the highest court of the state in which the case arose.'" <u>West</u>, 771 F.3d at 213 (quoting <u>Lefemine v. Wideman</u>, 672 F.3d 292, 298 (4th Cir. 2012)).

As discussed above, the fact that Defendants had to respond to an emergency which posed a threat to many prisoners and guards alike weighs against finding a clearly established violation. See Whitley, 475 U.S. at 320. In responding to an unexpected fire started by another inmate, prison staff had little time to consider their response. See West, 771 F.3d at 213 ("Qualified immunity takes cognizance of human imperfections. Implicit in the idea that officials have some immunity for their acts, is a recognition that they may err and that it is better to risk some error and possible injury from such error than not to decide or act at all." (internal quotation marks and ellipsis omitted)). Put simply, Plaintiff's Complaint does not identify any adequate basis to support a finding that Defendants committed a clearly established violation of Plaintiff's Eighth Amendment rights. Therefore, qualified immunity protects Defendants and the Court should dismiss Plaintiff's case.

Defendants finally assert that "Plaintiff's claims against Defendants for punitive damages should be dismissed for failure to adequately plead allegations rising to the level of punitive relief." (Docket Entry 31 at 2.) "'[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Smith v. Pepersack, Nos. 98-1842, 98-1843, 194 F.3d 1305 (table), 1999 WL 760218, at *5 (4th

-14-

Cir. 1999) (unpublished) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Moreover, "the callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987). Given that equivalence, because Plaintiff's Complaint fails to allege facts to support the contention that Defendants demonstrated deliberate indifference, as discussed above, the Complaint also fails to state a claim for punitive damages.

## **CONCLUSION**

Defendants have established grounds for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss for Failure to State a Claim (Docket Entry 31) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 1, 2015